IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

PATTY D. DAVIS                                                                    PLAINTIFF

V.                                                              NO. 1:11cv-00267-SA-JMV

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                   DEFENDANT

## REPORT AND RECOMMENDATION

Pending before the court is Plaintiff's Motion for summary judgment [13]. The matter has been submitted to the undersigned United States Magistrate Judge for issuance of a report and recommendation. And, having duly considered the submissions of the parties, the record and the applicable law, the undersign recommends that this case be reversed and remanded to the Commissioner of Social Security for an award of benefits for the reasons set out below.

## I. PROCEDURAL AND FACTUAL HISTORY

On November 21, 2005, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging her disability began November 8, 2005, due to a heart attack and high blood pressure. Doc. [8] p. ID 119-128, 141-152. Following a hearing, Administrative Law Judge ("ALJ"), Jim Fraiser issued an unfavorable decision for these claims on February 15, 2008. *Id.* at p. ID 40-49. After the claimant timely sought judicial review, U. S. Magistrate Judge Alan Alexander issued an Order wherein this court reversed and remanded ALJ Fraiser's decision for further development of the record regarding the opinion of Plaintiff's treating cardiologist, Dr. Roger A. Williams.[1] *Id.* at p. ID 488-89. Specifically, Judge Alexander

---

[1]In August 2007, Dr. Williams completed a cardiac residual functional capacity questionnaire. Doc. [8] p. ID 820-25. In the form, he opined that Plaintiff could lift up to ten pounds occasionally, but that she needed to shift from sitting, standing, or walking at will, could only tolerate low stress jobs, and could not be exposed to environmental hazards such as fumes

found that though the ALJ assigned controlling weight to Dr. Williams' opinion and gave the claimant an RFC largely consistent with that opinion, the RFC did not include any limitation related to plaintiff's need to elevate her feet–a limitation Dr. Williams had indicated. *Id.* at 489. Ultimately, Judge Alexander instructed the Commissioner that upon remand he needed to re-contact Dr. Williams for the purpose of clarifying the degree and frequency Plaintiff must elevate her leg or legs while she worked. *Id*. Judge Alexander further instructed that once clarification from Dr. Williams was obtained, the ALJ needed to consider the supplemental opinion appropriately and obtain additional vocational expert ("VE") testimony. *Id*.

As a result, on June 22, 2009, the Appeals Council remanded this case back to the ALJ. On August 12, 2009, the Office of Adjudication and Review re-contacted Dr. Williams and requested responses to the following interrogatories: with prolonged sitting, how high Plaintiff's leg(s) should be elevated and for what percentage of time during an eight-hour workday the leg(s) should be elevated if the Plaintiff had a sedentary job. *Id.* at 819. Dr. Williams responded that with prolonged sitting, Plaintiff needed to elevate her leg(s) 60% ("high") and for four hours during an eight-hour workday. *Id.*

On December 9, 2009, ALJ Fraiser held a second hearing. *Id*. at p. ID 465. Plaintiff, represented by her present attorney, appeared in person and testified. *Id.* at p. ID 467. A VE also testified at the hearing. *Id*. Also, prior to issuing a new decision, a medical interrogatory was submitted to Dr. James Anderson, a medical expert. *Id*. at p. ID 841. In his August 12, 2009, response, Dr. Anderson opined that Plaintiff's chronic congestive heart failure, ischemic heart disease with angina, history of myocardial infarction with coronary stenting, hypertension, and

---

and dangerous machinery. *Id.* Importantly, he also checked a box indicating Plaintiff would need to elevate her feet while at work. *Id.* at p. ID 823.

obesity, equaled Listing 4.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1, subsequent to November 2007. *Id*. at p. ID 838-840. However, Dr. Anderson found that from November 2005 to November 2007, "listing level severity was not demonstrated and light to sedentary work activity was appropriate."[2] *Id*. at p. ID 839. In his hearing decision dated January 13, 2010, the ALJ found Plaintiff was not disabled prior to November 1, 2007, but became disabled on that date and continued to be disabled through the date of the ALJ's decision. *Id*. at p. ID 448-458. Specifically, the ALJ determined that prior to November 1, 2007, the claimant could:

> lift/carry and push/pull a maximum of less than ten pounds; stand/walk a total of six hours of an eight-hour workday (one hour without interruption);[3] and, sit a total of six hours of an eight-hour workday (one hour without interruption); and, sit a total of six hours of an eight-hour workday (one hour without interruption). She could never climb ladders, crouch, kneel, or crawl, but could occasionally balance and stoop. The claimant should have [sic] avoided exposure to unprotected heights, hazardous machinery, chemicals, dust, fumes, temperature extremes, humidity, and loud noises. Finally, the claimant was expected to miss one to two days of work a month.

*Id*. at p. ID 453.

Ultimately, though Plaintiff was determined to be disabled from November 1, 2007 for purposes of her SSI application, because the ALJ found that her disability did not begin prior to the expiration of her insured status on December 31, 2006, she was not entitled to disability insurance benefits. *Id.* at p. ID 458. On October 26, 2011, the Appeals Council denied Plaintiff's

---

[2]The ALJ assigned "significant" weight to the opinion of Dr. Anderson. Doc. [8] p. ID 457.

[3]The ALJ's statement in his second decision that Plaintiff could stand/walk a total of six hours appears to be a mistake, especially since during the first and supplemental hearings the ALJ tendered hypotheticals to the vocational expert that stated the claimant could stand for only a total of two hours. Furthermore, the ALJ's first decision also limited the claimant to a maximum of two hours of standing. The Commissioner acknowledges this discrepancy in a footnote in his brief. Doc. [18] p. 5 n. 1. And, the court agrees that to the extent this portion of the ALJ's decision is an error, it is harmless.

request for review, *id*. at p. ID 426-428, thus making the ALJ's decision of January 13, 2010, the final decision of the Commissioner.

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[4] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[5] First, the claimant must prove he is not currently engaged in substantial gainful activity.[6] Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[7] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.10 (2010).[8] Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work.[9] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's residual functional

---

[4] *See* 20 C.F.R. §§ 404.1520 (2010).

[5] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[6] 20 C.F.R. §§ 404.1520(b) (2010).

[7] 20 C.F.R. §§ 404.1520(c) (2010).

[8] 20 C.F.R. §§ 404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2010).

[9] 20 C.F.R. §§ 404.1520(e) (2010).

4

capacity, age, education and past work experience, that he is capable of performing other work.[10] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[11]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994);

---

[10] 20 C.F.R §§ 404.1520(f)(1) (2010).

[11] *Muse*, 925 F.2d at 789.

*Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS

Plaintiff contends the Commissioner's decision is not supported by substantial evidence because the ALJ: 1) failed to properly weigh the medical opinion evidence of record and 2) did not consider the functional limitations of the impairments he acknowledged existed. Pl.'s Br. [14] p. 1. Because Plaintiff's first assignment of error is most meritorious and presents a basis upon which to reverse the decision of the Commissioner, the court will only address the first issue.

Plaintiff essentially argues that the ALJ ignored the opinion of Dr. Roger Williams, her treating cardiologist, despite indicating in his opinion that Dr. Williams' opinion was entitled to "significant weight" and never further considered the Plaintiff's need for leg elevation, the extent and duration of such elevation, nor provided a basis for rejecting the opinion of Dr. Williams. Pl.'s Br. [14] p. 7. The Commissioner essentially responds that "the ALJ's decision and question to the VE during the hearing establishes that the ALJ clearly considered Dr. Williams' opinion." Def.'s Br. [18] p. 11. The court is not moved by the Commissioner's response.

The court finds the ALJ implicitly rejected Dr. Williams' opinion–to the extent Dr. Williams opined that Plaintiff needed to have her legs elevated with prolonged sitting during the workday–because the RFC the ALJ formulated accounted for no such limitation.[12] Interestingly,

---

[12] The Commissioner posits that "[s]ince the ALJ did not find that Plaintiff needed a prolonged sitting limitation, he did not need to adopt Dr. Williams' opinion that with prolonged sitting, Plaintiff needed to elevate her legs 60 percent for four hours during an eight-hour workday." Def.'s Br. [18] p. 12. The Commissioner presumably reasons that because the ALJ determined that Plaintiff could sit only one hour uninterrupted, she did not need a prolonged sitting limitation. *See id.* For the reasons discussed later in this opinion, the court finds this argument is without merit.

the ALJ stated in his decision that in formulating the claimant's RFC, he "relied upon the opinion of Dr. Williams" and cited both Dr. Williams' 2007 Cardiac Residual Functional Capacity Questionnaire and his 2009 supplemental opinion.[13] *See* Doc. [8] p. ID 453. Yet–as in his first decision–in formulating Plaintiff's RFC, the ALJ made no reference to Dr. Williams' opinion that Plaintiff should elevate her legs with prolonged sitting and for 50% of the day when performing a sedentary job.

"[O]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (internal citations omitted). However, an ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Further, an ALJ may properly reject all or portions of a physician's opinion when the overall evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, pursuant to *Newton v. Apfel,* 209 F.3d 448 (5th Cir. 2000), the ALJ may *reject* the opinion of the claimant's treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) and there is no other reliable medical evidence from another *treating or examining* physician that *controverts* the treating specialist. *See Newton,* 209 F.3d at

---

[13]In a letter dated February 2, 2010, Dr. Williams indicated that his responses to the 2007 cardiac residual functional capacity questionnaire and the clarifications provided in 2009 related back to Plaintiff's first heart attack in 2005 and that at the time Plaintiff had an ejection fraction of 30-35%. Doc. [8] p. ID 439. This letter was presented to the Appeals Council on the Plaintiff's Request for Review of the ALJ's 2010 decision. *Id.* at p. ID 429-439.

7

455–57.

In this case, the ALJ presented no cause whatsoever for rejecting the opinion of Dr. Williams that with prolonged sitting, Plaintiff had to elevate her legs 60 % ("high") and for four hours during an eight-hour workday when performing a sedentary job. *See Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980) ("An administrative law judge may not arbitrarily reject uncontroverted medical testimony."). Indeed, the court is perplexed, especially considering that in its May 2009 Order remanding this case to the Commissioner, this court clearly pointed out that the ALJ was to not only recontact Dr. Williams regarding clarification of this opinion but ultimately "*consider* the supplemented opinion in accordance with the appropriate regulations concerning the evaluation of opinion evidence." Nothing indicates this was done. In his first decision, the ALJ assigned "controlling weight" to Dr. Williams' opinion, yet failed to include any limitations related to Plaintiff's need to elevate her feet in the RFC.[14] In his second decision, the ALJ reduced the weight he assigned to Dr. Williams' opinion to "significant weight" despite the fact that Dr. Williams had clarified his opinion regarding the degree and frequency with which Plaintiff was required to elevate her legs. And, again, the ALJ failed to include any limitation in

---

[14]The ALJ's initial RFC determination was as follows:

> [T]he claimant has the residual functional capacity to lift and carry 10 pounds occasionally and less than 10 pounds frequently. The claimant is able to sit 6 hours in an 8-hour workday and stand/walk 2 hours in an 8-hour workday (15 minutes at a time). The claimant is capable of occasional climbing, stooping, crouching, and pushing/pulling up to 10 pounds due to right leg numbness. She is able to frequently balance, but should never climb ladders, kneel or crawl and should avoid temperature extremes, humidity, noise, fumes, and hazardous machinery. The claimant should not work in high stress production pace jobs and may miss 1 day of work per month.

Doc. [8] p. ID 43.

the RFC determination consistent with Plaintiff's need to elevate her legs when performing a sedentary job. Ultimately, the court finds the ALJ rejected the portion of Dr. Williams' opinion regarding the need for Plaintiff to elevate her legs without performing the detailed analysis required by § 404.1527(d).[15]

Moreover, any reliance by the ALJ upon the opinion of Dr. Anderson that "light to sedentary work activity was appropriate" for Plaintiff between November 2005 and November 2007 was inappropriate. First, Dr. Anderson's interrogatory responses do not address Plaintiff's need to elevate her legs with prolonged sitting during the relevant period and, consequently, do not controvert and are not inconsistent with the opinion of Dr. Williams. Second, Dr. Anderson neither examined nor treated Plaintiff, and it appears that he based his conclusion that Plaintiff could perform "light - sedentary" work between November 2005 and November 2007 on an incomplete reading of the claimant's medical file.[16] Specifically, in interrogatory response number 6–his discussion of Plaintiff's impairments found to be established by the evidence–Dr. Anderson noted Plaintiff's "[h]istory of myocardial infarction 11-05 and coronary stenting x 1." Doc. [8] p. ID 838. However, nothing in Dr. Anderson's responses indicates he was aware of and considered Plaintiff's second heart attack of May 2007. Ultimately, the court finds the ALJ's decision that

---

[15]Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must evaluate the following: (1) examining relationship, (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s), (3) supportability, (4) consistency, (5) specialization, and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* 20 C.F.R. § 416.927(d); Social Security Ruling ("SSR") 96–6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); SSR 96–2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

[16]*See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (reversing and remanding case due to, among other things, the ALJ's sole reliance upon medical expert who based his opinion on an imperfect analysis of the reports of the claimant's treating physicians).

Plaintiff was not disabled during the relevant period is not supported by substantial evidence because his RFC determination was inconsistent with the opinion of Dr. Williams, and there is no evidence in the record that conflicts with Dr. Williams' opinion that beginning in November 2005, Plaintiff needed to elevate her legs for 50% of the workday if she had a sedentary job.[17]

The court's inquiry does not end here, however. Next, the court would like to turn its attention to the ALJ's determination at step five that despite the claimant's inability to perform her past relevant work,[18] there were other jobs existing in significant numbers in the national economy that she could perform. During the second hearing, the ALJ asked the vocational expert ("VE") whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.[19] The vocational expert testified that given all these factors the individual would be able to perform the requirements of two representative sedentary occupations, charge account clerk or order clerk, both performed at the sedentary exertional level. Sitting is one of the exertional demands of sedentary work, *see* SSR 96–9p, 1996 WL 374185 at *5, and its relationship to the full range of sedentary work is described as follows:

> In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8–hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2–hour intervals. If an individual is unable to sit for a total of 6 hours in an 8–hour

---

[17]Plaintiff testified that she has had to elevate her feet [presumably because of fluid retention] since her first heart attack. *See* Doc. [8] p. ID 475.

[18]The VE testified that Plaintiff's past work included work as a certified nursing assistant which was a semi-skilled job performed at the medium exertional level. Doc. [8] p. ID 480.

[19]Because Plaintiff established at step four that she was not able to perform her past relevant work, the Commissioner had the burden at step five of showing that Plaintiff could perform other work that existed in significant numbers in the national economy.

workday, the unskilled sedentary occupational base will be eroded.

*Id.* at *6.

The Commissioner calls the court's attention to the fact that "Dr. Williams did not find that Plaintiff needed to sit for prolonged periods of time" but only that her legs should be elevated when sitting for prolonged periods. Def.'s Br. [18] p.12. While the court acknowledges this point, the court must also call the Commissioner's attention to the fact that sedentary work by definition under the regulations entails at least six total hours of sitting during a workday.[20] And, both the ALJ's first and second RFC determinations indicated that the most Plaintiff could stand/walk in a workday was two hours, leaving six hours of sitting. Moreover, Dr. Williams' interrogatory responses specifically indicated that if the claimant had a "sedentary job," her legs should be elevated 50% of an eight-hour workday.

This, of course, leads the court to examine further the VE's testimony. Following the VE's response to the ALJ's first hypothetical, the ALJ added to his first hypothetical merely that "she would have to keep her legs elevated 60 percent of the way at [sic] 60 degree level for half the day." Doc. [8] p. ID 481. In response to the ALJ's second hypothetical, the VE testified that the individual "would not be able to work." *Id.*

The Commissioner presumably argues that because the ALJ found plaintiff could sit for only "one hour uninterrupted," there was no need to include a requirement for leg elevation with prolonged sitting and, consequently, the ALJ's first hypothetical to the VE sufficiently accounted for all of the claimant's limitations. *See* Def.'s Br. [18] p. 12-14. However, the Commissioner has

---

[20]*See Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995) (pointing out that vocational expert testimony established that claimant was only capable of sedentary work despite ALJ's hypothetical question to the VE which included an RFC of a reduced range of light work).

presented no legal authority or pointed to any medical evidence in the record which supports his position that an undefined "interruption" would sufficiently overcome Plaintiff's medically documented need to elevate her legs while performing a job that requires her to sit for a *total* of six hours in a workday. Moreover, Dr. Williams indicated both that Plaintiff could sit for only an hour at a time *and* that she must elevate her legs for 50% of a workday if she had a sedentary job. Thus, the Commissioner has simply failed to convince the court that the ALJ's addition of an hour-at-a-time sitting limitation obviates Plaintiff's need to elevate her legs for half of a workday when working in a sedentary capacity. In formulating a claimant's RFC, the ALJ–a layperson–may not substitute his own judgment for that of a physician. *See West v. Sullivan*, 751 F. Supp. 647, 648 (N.D. Tex. 1990). Nor is an ALJ allowed to "'play doctor' by using [his] own lay opinions to fill evidentiary gaps in the record. *Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (internal citation omitted). *See also, Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges must be careful not to succumb the temptation to play doctor. . . .Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations omitted). Therefore, the court finds that had Dr. Williams' opinion been properly credited, the VE's unchallenged testimony that there would be no jobs Plaintiff could perform would have established that she became disabled beginning November 8, 2005. *See Moisa v. Barnhart*, 367 F.3d 882, 886-887 (9th Cir. 2004) (remanding for award of benefits where ALJ's opinion was not supported by substantial evidence and where properly credited testimony of plaintiff and unchallenged testimony of VE established that claimant was not capable of performing any work). Finally, in light of the age and procedural history of this case and the fact that the record enables the court to determine that the claimant is entitled to benefits, remanding it for further administrative proceedings is unnecessary. *See Randall v. Sullivan, M.D.,* 956 F.2d 105 (5th Cir. 1992) (reversing and awarding benefits in

eight-year-old case where ALJ's decision not supported by substantial evidence). *See also, e.g., York v. Bowen*, 702 F. Supp. 903, 906-908 (N.D. Ga. 1987) (reversing and awarding benefits where treating physician's opinion had not been properly refuted, the ALJ substituted his own conclusions for the opinions of claimant's physicians, and vocational testimony in the record established that claimant would be disabled if the treating opinion were accepted).

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be granted and that this case be reversed and remanded with instructions to the Commissioner to calculate and award benefits for the relevant period.

The parties are referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within fourteen days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully, submitted this 6th day of November, 2012.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE